JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Albert Langlois ("Langlois"), appeals the trial court's decision granting summary judgment to appellees, W.P. Hickman Systems, Inc., David D'Anza, and Hickman Holdings, L.P. (collectively referred to as "appellees") on Langlois' claims of age discrimination, promissory estoppel, breach of contract, and fraud. Upon this court's de novo review, we affirm summary judgment in favor of appellees for the following reasons.
 I. RELEVANT FACTS {¶ 2} Prior to being employed full-time as director of finance with W.P. Hickman Systems, Inc. ("Hickman") in 2000, Langlois was employed part-time for almost two years as a consultant with Hickman. Throughout his employment with Hickman, Langlois was keenly aware of the company's financial condition and, in particular, knew that in 2000 and 2001, the company operated at losses of more than $2 million. The company sought to minimize its expenses and become profitable by cutting salaries and possibly, eliminating certain jobs in the finance department. Langlois was part of the planning processes behind the company's choice to cut salaries and prepared memoranda that showed employees' salaries. Among those employees, Langlois was the seventh highest paid individual at Hickman.
 {¶ 3} The first wave of change occurred in late 2001 when Hickman restructured various departments and reassigned certain job responsibilities among employees. The second wave of change occurred in September 2002 when David D'Anza ("D'Anza") assumed control and became president of Hickman. Finally, the third wave of change occurred in October 2002 when Hickman terminated Langlois, among others, in its continued efforts to reduce its force to return the company to profitability.
 II. LANGLOIS' ALLEGATIONS {¶ 4} After he was terminated, Langlois filed his complaint against appellees alleging four causes of action. In his first cause of action, Langlois claimed that he was terminated from Hickman as a result of impermissible age discrimination. In his second cause of action, Langlois claimed that, under the common law doctrine of promissory estoppel, D'Anza made numerous promises to him of future employment with Hickman, upon which he detrimentally relied. In his third cause of action, Langlois claimed that D'Anza breached his oral agreement to promote him to chief executive officer of the company once D'Anza acquired control of Hickman. Lastly, in his fourth cause of action, Langlois claimed that he was fraudulently induced to stay with Hickman when D'Anza represented to him that he would be the chief executive officer of the company once D'Anza assumed control.
 III. LANGLOIS' APPEAL {¶ 5} Langlois cites five assignments of error on appeal. The gravamen of assignments of error one through four is that the trial court erred in granting summary judgment to appellees on each of Langlois' four causes of action. In particular, Langlois argues that genuine issues of material fact remain and that appellees are precluded from summary judgment. With respect to his fifth assignment of error, Langlois argues that the trial court erred in granting summary judgment to Hickman Holdings, L.P. ("Holdings") and concluding that all claims against Holdings were meritless.
 IV. ASSIGNMENT OF ERROR ONE — AGE DISCRIMINATION {¶ 6} For his first assignment of error, Langlois argues that the trial court erred in granting summary judgment to appellees on his age discrimination claim where he alleged direct evidence of age bias. In support of his argument, Langlois contends that D'Anza's one-time remark that "[Langlois] is too old," coupled with the facts that his age fell within the protected class, he was discharged from Hickman, he was qualified for the position, and he was replaced by a person substantially younger, was more than sufficient to survive summary judgment. However, Langlois' contention lacks merit.
 {¶ 7} R.C. 4112.02 provides in pertinent part as follows:
 {¶ 8} "It shall be an unlawful discriminatory practice:
 {¶ 9} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 10} The Ohio Supreme Court has held that "a party can support a claim of age discrimination by presenting either direct or indirect evidence of such discrimination." Kohmescher v.Kroger Co. (1991), 61 Ohio St.3d 501, 505, 575 N.E.2d 439. Within the context of direct evidence, "isolated and ambiguous statements * * * are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." Stair v. Phoenix Presentations, Inc. (1996),116 Ohio App.3d 500, 506, 688 N.E.2d 582. Indeed, if there is no nexus between the statement and the employment action taken, the isolated comment is insufficient to support a claim of unlawful discrimination. Street v. Gerstenlager Co. (1995),103 Ohio App.3d 156, 163, 658 N.E.2d 1105.
 {¶ 11} Here, D'Anza's alleged comment that "[Langlois] is too old — he'll never change" was uttered in a car ride and in the context of the suggestion that the new management team should place their differences aside. Langlois presented no evidence of a nexus between D'Anza's alleged comment and Langlois' discharge. Thus, the one-time remark is insufficient to support a claim for direct evidence of unlawful age discrimination.
 {¶ 12} Absent direct evidence of age discrimination, to establish a prima facie case, Langlois must demonstrate (1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. SeeKohmescher, 61 Ohio St.3d at 505-506. The burden then shifts to appellees to "overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason" for Langlois' discharge. The burden then shifts again to Langlois "to show that the rationale set forth by [appellees] was only a pretext for unlawful discrimination." Id. at 503-504.
 {¶ 13} Here, it is undisputed that Langlois was 57 years old at the time he was discharged from Hickman. Although appellees would like this court to believe that Langlois was not qualified for the position, throughout his employment with Hickman, his performance appeared to meet the expectations of Hickman due to the lack of evidence of a reprimand or suspension. Moreover, appellees asserted only that they discharged Langlois as a result of a reduction in force and not because Langlois was incapable of performing or not qualified for his job. Upon this court's review of the record, Langlois was qualified for the position.
 {¶ 14} However, Langlois was not "replaced" within the meaning of Ohio law. A former employee "is not replaced when another employee is assigned to perform the [former employee's] duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Atkinson v. International Technegroup, Inc.
(1995), 106 Ohio App.3d 349, 359, 666 N.E.2d 257. Here, Hickman neither hired a new employee nor reassigned an existing employee to replace Langlois. Instead, Hickman reassigned Langlois' responsibilities to 43-year-old, Cynthia Strunk ("Strunk"), who had been an employee for 11 years. Strunk performed Langlois' duties in addition to her own existing job duties. Because Hickman did not "replace" Langlois, Langlois failed to make a prima facie case of age discrimination and appellees are entitled to judgment as a matter of law.
 {¶ 15} Even if this court were to conclude that Langlois made a prima facie case of age discrimination, the record is entirely devoid of any credible evidence that Hickman's reduction in force efforts were merely pretextual. Thus, there is no genuine issue of material fact, appellees are entitled to summary judgment as a matter of law on Langlois' age discrimination claim, and Langlois' first assignment of error is overruled.
 V. ASSIGNMENT OF ERROR TWO — PROMISSORY ESTOPPEL {¶ 16} For his second assignment of error, Langlois argues that appellees' promises regarding future employment precluded them from terminating him. However, Langlois' argument lacks merit.
 {¶ 17} In the employment context, to establish a claim for promissory estoppel, an employee must prove the following:
 {¶ 18} "(1) a clear and unambiguous promise,
 {¶ 19} "(2) made by the employer,
 {¶ 20} "(3) which the employer should reasonably and forseeably expect to induce reliance by the employee, and
 {¶ 21} "(4) upon which the employee must have actually relied and suffered injury as a result." Miller v. Lindsay-Green,Inc., Franklin App. No. 04AP-848, 2005-Ohio-6366, ¶ 35.
 {¶ 22} Here, Langlois cannot satisfy even the first element of promissory estoppel because neither of the two alleged "promises" contained a specific duration of continued employment. The alleged "promise" that Langlois would become chief executive officer at Hickman if he helped D'Anza acquire control of the company did not contain a specific length of time. Likewise, the alleged "promise" that Langlois would have a job as long as his health permitted or until he decided to retire is insufficient to overcome a presumption of at-will employment because it does not contain a specific length of time. The alleged "promises" were ambiguous and unclear.
 {¶ 23} Even assuming that the alleged "promises" were specific, D'Anza, then a co-worker of Langlois and not Langlois' employer, made the "promises." Furthermore, Langlois presented no evidence that he was actually injured as a result of relying upon the alleged "promises." His claim that he did not pursue his own consulting business in reliance upon D'Anza's alleged "promises" is insufficient without evidence that Langlois actually rejected additional work. There is no evidence of an actual injury; thus, no genuine issue of material fact remains, appellees are entitled to judgment as a matter of law on Langlois' promissory estoppel claim, and Langlois' second assignment of error is overruled.
 VI. ASSIGNMENT OF ERROR THREE — BREACH OF CONTRACT {¶ 24} For his third assignment of error, Langlois argues that certain promises constituted an implied employment contract. In particular, Langlois repackages his failed promissory estoppel claim into a breach of contract claim. However, Langlois' argument lacks merit.
 {¶ 25} Here, Langlois cannot magically turn the failed "promises" into legitimate "offers" necessary to form the basis of a contract. Just as D'Anza's statement to Langlois that he would be chief executive officer of Hickman if he assisted D'Anza in acquiring control of Hickman lacked a specific length of time necessary to form a clear and unambiguous "promise," so too is the statement not specific enough to form a true offer. Moreover, Langlois' contention that Hickman's former president's statement that he and Langlois "would be the last two to leave the facility and lock the doors" is an offer for future employment is untenable. The statement is extremely vague to be considered a true offer for future employment. Thus, there is no genuine issue of material fact, appellees are entitled to judgment as a matter of law on Langlois' breach of contract claim, and Langlois' third assignment of error is overruled.
 VII. ASSIGNMENT OF ERROR FOUR — FRAUD {¶ 26} For his fourth assignment of error, Langlois argues that he was fraudulently induced into staying with Hickman based on the alleged "promises" made to him. Once again, Langlois recycles his promissory estoppel claim into a fraudulent inducement claim. However, Langlois' argument fails.
 {¶ 27} Fraud consists of the following:
 {¶ 28} "(a) a representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 29} "(b) which is material to the transaction at hand,
 {¶ 30} "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 31} "(d) with the intent of misleading another into relying upon it,
 {¶ 32} "(e) justifiable reliance upon the representation or concealment, and
 {¶ 33} "(f) a resulting injury proximately caused by the reliance." Groob v. Keybank, 108 Ohio St.3d 348,2006-Ohio-1189, ¶ 47, 843 N.E.2d 1170.
 {¶ 34} Similar to his failed promissory estoppel and breach of contract claims, Langlois cannot demonstrate that appellees made any representation to him about future continued employment with Hickman. All of the alleged "promises" lacked the requisite specificity of time. Thus, there is no genuine issue of material fact, appellees are entitled to judgment as a matter of law on Langlois' fraud claim, and Langlois' fourth assignment of error is overruled.
 VIII. ASSIGNMENT OF ERROR FIVE — CLAIMS AGAINST HOLDINGS {¶ 35} Finally, Langlois argues in his fifth assignment of error, that the trial court abused its discretion by granting summary judgment to Holdings on each of his claims. In particular, Langlois contends that, at the time he was terminated, Holdings was the holding company that controlled Hickman and should likewise be liable for his unlawful discharge. However, Langlois' contention is without merit.
 {¶ 36} Langlois presented no evidence that Holdings made any employment decisions, including the decision to terminate him. Instead, Langlois' theory of Holdings' liability is strictly guilt by association and not supported by credible evidence. Thus, Langlois' fifth assignment of error is overruled because the trial court did not abuse its discretion when it granted summary judgment to Holdings on each of Langlois' claims.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Diane Karpinski, P.J., and Mary Eileen Kilbane, J., concur.